*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RAMONA CHRISTENSEN and JACK SCOTT, | ) ) ) |
| Appellants, | ) Supreme Court No. S-14963 ) |
| v. | ) Superior Court No. 3AN-10-07948 CI ) |
| | ) O P I N I O N |
| ALASKA SALES & SERVICE, INC., | ) ) No. 6959 – October 10, 2014 |
| Appellee. | ) ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances:  A. Lee Petersen, Petersen Professional Corp., Willow, for Appellants.  Terrance A. Turner and Natalie A. Cale, Turner & Mede, P.C., Anchorage, and Edward A. Gray and Heather Russell Fine, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, Pennsylvania, for Appellee.

Before:  Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I.     INTRODUCTION

Four years after a couple purchased a new car, it collided with two moose on the Parks Highway.  The couple sued the car dealership for product liability, alleging that the car's seat belt failed to restrain the driver in the accident.  The superior court granted summary judgment to the dealership, concluding that "no reasonable jury could

find that the Plaintiffs have proven that the seat belt . . . was defective." The couple appeals, arguing that the superior court applied an incorrect summary judgment standard and that genuine issues of material fact made summary judgment inappropriate. Because we conclude that the couple has raised genuine issues of material fact regarding a seat belt defect and causation of the driver's injury, we reverse the superior court's grant of summary judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In spring 2004 Ramona Christensen and Jack Scott purchased a new 2004 Buick from Alaska Sales & Service, Inc. In June 2008 Christensen was driving the Buick on the Parks Highway when she collided with two moose. Other than Christensen, there were no witnesses to the accident. Photographs taken after the accident show damage to the Buick's front driver's side.

After the collision Christensen called the police to report the accident and called Scott to come pick her up at the scene. When Scott arrived Christensen said she felt nauseated, and Scott noticed a red mark on her forehead. Christensen could not remember many details of the collision, including whether she hit her head on something inside the car.

During the days following the accident, Christensen reported feeling light-headed and dizzy. Christensen's speech became disfluent and broken, and her gait became unsteady, causing her to fall repeatedly. About one week after the accident, Christensen sought medical attention to address her worsening symptoms. A neurologist examined Christensen and ordered an MRI spectroscopy. The spectroscopy showed evidence of bilateral frontal lobe brain damage. Since 2008 numerous other physicians and psychiatrists have examined and treated Christensen for her continuing speech, short-term memory, and mobility problems.

Shortly after the accident Scott took the Buick to a repair shop. Scott suspected that Christensen's seat belt failed to work properly during the crash. Prior to the accident Scott had noticed that the seat belts in the Buick seemed different than what he was accustomed to — the Buick's seat belts sometimes had not retracted on their own or locked when suddenly pulled forward. When Scott asked the repair shop to repair the driver's seat belt, the repair shop responded that both the driver's and passenger's seat belts were not working properly. The repair shop contacted Alaska Sales & Service, but it refused to pay for seat belt replacements. Scott's insurance company agreed to pay for the replacements, and the repair shop replaced both seat belts. The original seat belts were not returned to Scott.

B.    **Proceedings**

In 2010 Christensen and Scott filed suit against Alaska Sales & Service, claiming that the Buick's seat belt failed to work properly during the crash. After receiving answers to interrogatories, taking depositions of Christensen and Scott, and obtaining an expert affidavit, Alaska Sales & Service filed a motion for summary judgment. Alaska Sales & Service argued that Christensen and Scott had not presented enough evidence that the Buick's seat belt was defective or that a seat belt failure caused Christensen's injuries. The superior court granted summary judgment to Alaska Sales & Service. Christensen and Scott filed a motion to reconsider; the superior court denied reconsideration and set out its reasons for granting summary judgment to Alaska Sales & Service. The court described the evidence presented, including the absence of the original seat belts, and concluded that "no reasonable jury could find that [Christensen and Scott] have proven that the seat belt . . . was defective."

Christensen and Scott appeal.

## III. STANDARD OF REVIEW

We review grants of summary judgment de novo.[1]

## IV. DISCUSSION

### A. The Summary Judgment Standard In Alaska

The superior court dismissed Christensen and Scott's case on the ground that "no reasonable jury could find that [Christensen and Scott] have proven that the seat belt . . . was defective." Christensen and Scott argue that to survive the motion for summary judgment, they only had to show they could present admissible evidence to raise a genuine issue of material fact for trial. Alaska Sales & Service responds that the correct summary judgment test is whether "even if everything [Christensen and Scott] said was true . . . a reasonable jury . . . _could_ find in their favor," and that the superior court actually meant and used this standard. (Emphasis in original.) Christensen and Scott are more correct: a non-moving party does not need to *prove* anything to defeat summary judgment. But a non-moving party cannot create a genuine issue of material fact merely by offering admissible evidence — the offered evidence must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence. We take this opportunity to clarify and reaffirm Alaska's longstanding summary judgment standard.

Alaska Civil Rule 56 provides for judgment to be granted to a party where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[2] One of our earliest cases involving Rule 56 illustrated the meaning of "genuine issue" by affirming a grant of summary judgment against a party

---

[1] *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013) (citing *State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs. v. Sandsness*, 72 P.3d 299, 301 (Alaska 2003)).

[2] Alaska R. Civ. P. 56(c).

who had pointed to no evidence supporting his position. *Gilbertson v. City of Fairbanks* involved a dispute over unpaid utility bills between the city-owned utility and a hotel owner whose hotel had been destroyed in a fire.[3] The city filed a motion for summary judgment, submitting an affidavit from the city comptroller detailing the hotel owner's unpaid heat, electric, water, and telephone bills.[4] The hotel owner responded by submitting his deposition testimony: " 'I am sure my bills w[ere] paid as my cancelled checks show . . . . [S]o far as I know. I could have lost some checks in the fire.' "[5] The superior court granted summary judgment to the city.[6]

We affirmed the superior court's decision because the hotel owner had not pointed to any evidence actually disputing the city comptroller's testimony.[7] We noted the hotel owner's assertion that he " 'could have lost some checks in the fire' " was contradicted by the physical evidence: "All of the checks produced . . . plainly indicated that his utility bills were not fully paid. . . . From the cancelled checks produced for every month preceding the fire, and including the month of the fire, the fair inference was that no checks were lost."[8] And during his deposition, when the city's lawyer asked the hotel owner whether an audit of his checks would show an unpaid utility bill balance,

---

[3]    368 P.2d 214, 214-15 (Alaska 1962).

[4]    *Id.*

[5]    *Id.* at 215.

[6]    *Id.* at 214.

[7]    *Id.* at 216-17.

[8]    *Id.* at 215-16.

the hotel owner refused to answer.[9]  That question "went to the very heart of the issue — where an unequivocal straightforward answer might well have raised an issue of fact."[10]  The city had met its summary judgment burden of putting forth evidence showing the lack of genuine issues of material fact, and the hotel owner had failed to "clearly stat[e] his defense of payment and [show] the court how he planned to support that defense with facts which would be admissible in evidence at the trial."[11]  We affirmed the grant of summary judgment on the ground that no genuine issue of material fact remained for trial.[12]

*Gilbertson* exemplifies the summary judgment standard we consistently have followed.  "[A] party seeking summary judgment has the initial burden of proving, through admissible evidence, that there are no [genuine] disputed issues of material fact and that the moving party is entitled to judgment as a matter of law."[13]  Once the moving party has made that showing, the burden shifts to the non-moving party "to set forth specific facts showing that he could produce evidence reasonably tending to dispute or

---

[9]     *Id.* at 216.

[10]    *Id.*

[11]    *Id.* at 216-17.

[12]    *Id.*

[13]    *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760 n.25 (Alaska 2008); *see also Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 447-48 (Alaska 2002) ("The movant bears the initial burden of proving through admissible evidence (1) the absence of genuine fact disputes, and (2) its entitlement to judgment as a matter of law." (citing *Philbin v. Matanuska-Susitna Borough*, 991 P.2d 1263, 1265 (Alaska 1999))); *Shade v. Co & Anglo Alaska Serv. Corp.*, 901 P.2d 434, 437 (Alaska 1995) ("[I]t is the moving party that bears the initial burden of proving, through admissible evidence, the absence of genuine factual disputes and its entitlement to judgment."); *Gilbertson*, 368 P.2d at 216.

contradict the movant's evidence and thus demonstrate that a material issue of fact exists."[14]

In *Gilbertson* we observed that Alaska Civil Rule 56 mirrors Federal Rule of Civil Procedure 56,[15] and for the first 29 years of statehood we followed the federal courts' approach to summary judgment.[16] Then in 1986 the U.S. Supreme Court announced a new interpretation of the federal summary judgment standard,[17] incorporating the substantive evidentiary burdens applicable at trial into the summary judgment determination.[18]

In *Anderson v. Liberty Lobby, Inc.* a citizens group filed libel claims against a magazine and its publisher for portraying the group's members as racists.[19] The magazine moved for summary judgment in federal district court, submitting a reporter's affidavit stating that he believed the information published about the group was true.[20]

---

[14]    *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978); *see also Gilbertson*, 368 P.2d at 216-17.

[15]    368 P.2d at 214 ("The rules are identical in every aspect with which we are here concerned.").

[16]    *See Moffatt v. Brown*, 751 P.2d 939, 943-44 (Alaska 1988) (rejecting new federal summary judgment standard); *Bentley Family Trust, Bank of Cal. v. Lynx Enters., Inc.*, 658 P.2d 761, 765 n.11 (Alaska 1983) (citing federal summary judgment decisions); *Palzer v. Serv-U-Meat Co.*, 419 P.2d 201, 205 (Alaska 1966) (following federal summary judgment approach).

[17]    *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

[18]    *Id.*; *see also* Samuel Issacharoff & George Loewenstein, *Second Thoughts About Summary Judgment*, 100 YALE L.J. 73, 85 (1990).

[19]    477 U.S. at 244-45.

[20]    *Id.* at 245.

If accepted as true, the reporter's statement would have negated an essential element of the group's libel claim.[21] The group responded with allegations that the reporter had relied on clearly unbelievable sources — allegations the group claimed disputed the reporter's statement of belief that the information was true.[22] The group argued that it had raised a genuine issue of material fact, but the federal district court disagreed and granted summary judgment to the magazine.[23]

The U.S. Supreme Court's analysis began with a discussion of summary judgment standards and the appropriate weight to give conflicting evidentiary claims.[24] The Court clarified the meaning of Federal Rule 56 "genuine issues" of material fact, defining a "genuine" issue as one from which a "reasonable jury could return a verdict for the nonmoving party."[25] By defining "genuine issues" in terms of a jury outcome, the Court incorporated the substantive evidentiary burdens on the parties at the summary judgment stage: "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[26] "Sufficient" evidence requires more than "a scintilla of evidence" supporting the non-moving party's position.[27]

---

[21] *See id.* at 244 (noting the requirement for actual malice in libel claims).

[22] *Id.* at 246.

[23] *Id.*

[24] *Id.* at 247-52.

[25] *Id.* at 248.

[26] *Id.* at 249.

[27] *Id.* at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could
(continued...)

The *Liberty Lobby* Court equated summary judgment with the existing standard for deciding directed verdict motions under Federal Rule 50.[28] The Court explained that "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[29] Thus, both federal summary judgment and directed verdict standards required federal courts to inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[30]

In *Moffatt v. Brown* we considered whether to follow *Liberty Lobby*'s new approach to summary judgment, but ultimately rejected it.[31] In that case, a physician sued a newsletter publisher for defamation related to allegedly false statements about the physician's abortion procedures.[32] The publisher moved for summary judgment, arguing that the superior court should apply the *Liberty Lobby* test for summary judgment and

---

[27]    (...continued)
reasonably find for the plaintiff.").

[28]    *Id.* at 250-51; *see* Fed. R. Civ. P. 50(a)(1) ("If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . (B) grant a motion for judgment as a matter of law against the party . . . .").

[29]    *Liberty Lobby*, 477 U.S. at 252; *see also id.* at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

[30]    *Id.* at 251-52 ("The 'primary difference between the two motions is procedural . . . . In essence, though, the inquiry under each is the same . . . .' " (quoting *Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd.*, 461 U.S. 731, 745 n.11 (1983))).

[31]    751 P.2d 939, 942-43 (Alaska 1988).

[32]    *Id.* at 940.

determine there was not sufficient evidence to raise a genuine issue of material fact because no reasonable jury would find for the physician.[33] The superior court denied the publisher's motion.[34]

We affirmed the denial of summary judgment, concluding that Alaska Civil Rule 56 does not require a trial court to apply substantive evidentiary standards.[35] We rejected *Liberty Lobby*'s summary judgment reformulation and declined "to incorporate the applicable substantive evidentiary standard into this state's summary judgment practice."[36] Summary judgment does not require the non-moving party to prove factual issues according to the applicable evidentiary standard, and does not allow trial judges to predict how a reasonable jury would decide the case — we explained that weighing and evaluating evidence " 'intrudes into the province of the jury.' "[37]

Since *Moffatt* we consistently have interpreted Rule 56 to require only " 'a showing that a genuine issue of material fact exists to be litigated, and not a showing that a party will ultimately prevail' " at trial.[38] There are two important aspects to this

---

[33]     *Id.* at 940-41.

[34]     *Id.* at 941.

[35]     *Id.* at 943.

[36]     *Id.*

[37]     *Id.* at 944 (quoting *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 516 A.2d 220, 235-36 (N.J. 1986)).

[38]     *E.g.*, *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014) (quoting *Moffatt*, 751 P.2d at 943-44); *DeNardo v. Bax*, 147 P.3d 672, 684 (Alaska 2006).

requirement. First, a material fact is one upon which resolution of an issue turns.[39] Second, because the existence of a dispute over a material fact is a question of law,[40] the determination is objectively based and employs a reasonableness standard.[41] Although we occasionally have described the reasonableness standard as whether "reasonable jurors could disagree on the resolution of a factual issue,"[42] our perhaps inartful use of the term "reasonable jurors" was not meant to suggest use of the federal summary judgment standard. We require only that the evidence proposed for trial must not be

---

[39] *Sonneman v. State*, 969 P.2d 632, 635 (Alaska 1998) ("A factual issue will not be considered material if, even assuming the factual situation to be as the non-moving party contends, he or she would still not have a factual basis for a claim for relief against the moving party." (citing *Whaley v. State*, 438 P.2d 718, 720 (Alaska 1968))).

[40] *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.,* 322 P.3d 114, 122 (Alaska 2014) ("Whether the evidence presented a genuine issue of material fact is a question of law that we independently review." (quoting *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013)) (internal quotation marks omitted)).

[41] *See Yurioff v. Am. Honda Motor Co.*, 803 P.2d 386, 389 (Alaska 1990) ("To prevent summary judgment, [the non-movant] was required to rebut this prima facie showing with evidence 'reasonably tending to dispute or contradict' [the movant's] evidence." (quoting *State, Dep't of Highways v. Green*, 586 P.2d 596, 606 n.32 (Alaska 1978))); *Semlek v. Nat'l Bank of Alaska*, 458 P.2d 1003, 1007 (Alaska 1969) ("[I]t was incumbent upon the appellants to set forth facts showing that they could produce admissible evidence which reasonably would tend to dispute the appellees' evidence and demonstrate that a triable issue existed."); *Isler v. Jensen*, 382 P.2d 901, 902 (Alaska 1963) ("[T]o prevent the entry of a summary judgment, [non-movants must] set forth facts showing that they could produce admissible evidence which reasonably would tend to dispute or contradict [movants'] evidence . . . .").

[42] *E.g.*, *Kalenka*, 305 P.3d at 349 (quoting *Burnett v. Covell*, 191 P.3d 985, 990 (Alaska 2008)) (internal quotation marks omitted); *McGee Steel Co. v. State ex rel. McDonald Indus. Alaska, Inc.*, 723 P.2d 611, 614 (Alaska 1986); *accord Green v. N. Publ'g Co.*, 655 P.2d 736, 743 (Alaska 1982).

based entirely on "unsupported assumptions and speculation"[43] and must not be "too incredible to be believed by reasonable minds."[44]  After the court makes reasonable inferences from the evidence in favor of the non-moving party,[45] summary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue.[46]

Alaska's summary judgment standard does not allow trial courts, on the limited evidence presented at the summary judgment stage, to make trial-like credibility determinations, conduct trial-like evidence weighing,[47] or decide whether a non-moving party has proved its case.  Although a trial court initially must determine whether the

---

[43]     *Peterson v. State, Dep't of Natural Res.*, 236 P.3d 355, 367 (Alaska 2010) (quoting *Perkins v. Doyon Universal Servs., LLC*, 151 P.3d 413, 416 (Alaska 2006)) (internal quotation marks omitted); *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 661 (Alaska 2006) (quoting *French v. Jadon, Inc.*, 911 P.2d 20, 25 (Alaska 1996)) (internal quotation marks omitted).

[44]     *Wilson v. Pollet*, 416 P.2d 381, 384 (Alaska 1966).

[45]     *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 696 (Alaska 2014) (quoting *Lum v. Koles*, 314 P.3d 546, 552 (Alaska 2013)).  An inference is a "conclusion reached by considering other facts and deducing a logical consequence from them." BLACK'S LAW DICTIONARY 897 (10th ed. 2014).

[46]     *See supra* note 41.

[47]     *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 804 (Alaska 2012) ("Courts do not weigh evidence or witness credibility on summary judgment."); *accord Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 765 (Alaska 1987).

In *Braund, Inc. v. White* we recognized the complexity of the court's task in evaluating evidence at the summary judgment stage: "The most difficult determinations lie in the area of credibility.  The question of when summary judgment should be denied because of credibility is difficult to determine."  486 P.2d 50, 53 n.3 (Alaska 1971).  But evidence or assertions should be rejected based on credibility only when it is "too incredible to be believed by reasonable minds." *Wilson*, 416 P.2d at 384.

evidence could be believed by a reasonable person, that decision is not based on whether the court actually believes the evidence or whether it believes the moving party has better evidence.[48] The trier of fact ultimately may find against the non-moving party after evaluating credibility and applying the substantive evidentiary standards of proof at trial. But the only questions to be answered at the summary judgment stage are whether a reasonable person could believe the non-moving party's assertions and whether a reasonable person could conclude those assertions create a genuine dispute as to a material fact.[49]

---

[48]    *See Wilson*, 416 P.2d at 384 ("The court is not to resolve any existing genuine issues as to material facts in determining a summary judgment motion.").

[49]    *Cf. Sharp v. Fairbanks N. Star Borough*, 569 P.2d 178, 183-84 (Alaska 1977) ("Although the issue of 'proximate cause' is normally left for the trier of fact where unresolved fact questions remain, it becomes a question of law where the evidence is such that reasonable minds cannot differ." (footnote omitted)); *Otis Elevator Co. v. McLaney*, 406 P.2d 7, 9-10 (Alaska 1965) ("Review of the record convinces us that a jury question was presented as to the issues . . . because fair-minded jurors could differ as to the conclusions of fact that might be drawn from the evidence which was presented as to these questions.").

We reiterate that our summary judgment standard is not the same as the standard for deciding post-trial motions for directed verdict. *Compare* Alaska R. Civ. P. 56(c), *with* Alaska R. Civ. P. 50(a). *See Murray E. Gildersleeve Logging Co. v. N. Timber Corp.*, 670 P.2d 372, 377 (Alaska 1983) ("[A] directed verdict will be granted when reasonable jurors could not differ in their resolution of a disputed issue of fact."). To the extent that we have equated the summary judgment and directed verdict standards, *see, e.g.*, *Cameron v. Chang-Craft*, 251 P.3d 1008, 1017 & n.16 (Alaska 2011); *Braund, Inc.*, 486 P.2d at 53, we disavow those misleading statements.

We reiterate that ours is a "lenient standard for withstanding summary judgment."[50] The low standard for surviving summary judgment serves the important function of preserving the right to have factual questions resolved by a trier of fact only after following the procedures of a trial. Alaska's traditional standard for summary judgment is more protective of this right than the federal standard.[51] We see no reason to deviate from our long-established summary judgment standard today.

## B.     Genuine Issues Of Material Fact Precluded Summary Judgment.

To prevail on their design-defect claim of strict liability, Christensen and Scott ultimately must prove at trial that the Buick's seat belt was defective and that the defect caused Christensen some compensable injury.[52] The superior court granted summary judgment on the issue of defect, but Alaska Sales & Service also argues that there is no evidence for causation, presumably as an alternative ground for upholding

---

[50]     *Shaffer v. Bellows*, 260 P.3d 1064, 1069 (Alaska 2011) (citing *Estate of Milos v. Quality Asphalt Paving, Inc.*, 145 P.3d 533, 537 (Alaska 2006)); *see also Hammond v. State, Dep't of Transp. & Pub. Facilities*, 107 P.3d 871, 881 (Alaska 2005) ("It is well established that 'the evidentiary threshold necessary to preclude an entry of summary judgment is low.' " (quoting *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1032 (Alaska 2002))).

[51]     *See DeNardo v. Bax*, 147 P.3d 672, 683-84 (Alaska 2006) ("The standard for granting and upholding summary judgments in Alaska is therefore more rigorous than the federal standard."); *Moffatt v. Brown*, 751 P.2d 939, 944 (Alaska 1988) (recognizing that the federal summary judgment standard "inevitably implicates a weighing of the evidence, an exercise that intrudes into the province of the jury" (quoting *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 516 A.2d 220, 236 (N.J. 1986))); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 266 (1986) (Brennan, J., dissenting) ("[T]he Court's opinion is also full of language which could surely be understood as an invitation — if not an instruction — to trial courts to assess and weigh evidence much as a juror would . . . .").

[52]     *See Dura Corp. v. Harned*, 703 P.2d 396, 405-06 (Alaska 1985), *superseded on other grounds by statute*, Tort Reform Act, ch. 139, § 1, SLA 1986.

summary judgment. Construing all of the evidence in the light most favorable to Christensen and Scott and making all reasonable factual inferences in their favor, we conclude that there are genuine issues of material fact with respect to both the seat belt defect and causation.

**1.     Evidence exists reasonably suggesting a defect in the seat belt.**

Christensen and Scott presented evidence that is not too incredible to be believed and, taking all reasonable inferences in their favor, raises a discernible dispute whether the driver's seat belt was defective at the time of the accident. Christensen and Scott produced evidence indicating an unbroken chain of custody of the Buick and that the seat belts as originally sold had not been altered in any way. Scott stated that before the accident he tested the seat belts by quickly pulling them forward and that sometimes the mechanism would not lock or retract the belts. After the accident the seat belts were replaced but, according to Scott, the new seat belts failed in the same manner as the previous belts. Scott testified that the new seat belts would also sometimes not lock in place following a sudden forward movement. This evidence supports the inference that the driver's seat belt may not have worked as intended in the accident.

Christensen said she always wears her seat belt and was wearing it at the time of the accident. Christensen also said that after hitting the moose she was not pinned against her seat and that she had no bruising or marks on her body other than a red mark on her forehead. The absence of bruising from the seat belt supports an inference that it did not restrain Christensen during the collision, and the forehead marking supports the inference that her body went forward far enough to contact something in the car; both support the inference that the seat belt may not have restrained her as intended.

Alaska Sales & Service points to the lack of specific pieces of evidence in the record supporting a seat belt defect. According to Alaska Sales & Service, summary

judgment was warranted because Christensen and Scott could not produce the seat belts in question, a description of the seat belt's performance during the crash, evidence of occupant contact marks within the vehicle, or any police report describing the collision. Although these evidentiary gaps may play a role in the resolution of the case at trial, the evidence in the record and reasonable inferences drawn from the evidence raise a genuine issue of material fact as to the seat belt defect.

> **2.      Evidence exists reasonably suggesting Christensen's injury was caused by the seat belt defect.**

Christensen and Scott also produced evidence that is not too incredible to be believed and, taking all reasonable inferences in their favor, raises a discernible dispute whether the allegedly defective seat belt caused her injury. Christensen and Scott said that after the accident Christensen had a mark on her forehead. Christensen said she could not remember some of the events immediately before, during, or after the collision. Christensen's ongoing post-accident symptoms include dizziness, impaired speech, and difficulty walking.

Christensen and Scott presented evidence from medical specialists diagnosing a "closed head injury" and "bilateral frontal damage" to her brain. A neurologist noted that Christensen's symptoms "started after the accident," and although none of the treating physicians could yet conclude with certainty that the accident caused Christensen's brain injury, the neurologist stated that "there is no other explanation."

Alaska Sales & Service argues that Christensen and Scott cannot establish causation without an expert who can examine the seat belt and link Christensen's brain injury to the seat belt defect. But the evidence and reasonable inferences that can be drawn from it support Christensen and Scott's allegation that Christensen suffered a head injury. The mark on Christensen's head and her memory loss support an inference that she hit her head during the accident hard enough to lose consciousness. Christensen's

and Scott's testimony about symptom onset, along with the neurologist's statements describing Christensen's symptoms as beginning after the accident and noting "there is no other explanation," support an inference that her symptoms resulted from the accident.[53]

### 3. Summary judgment was inappropriate.

Christensen and Scott raised genuine issues of material fact with respect to both seat belt defect and causation. The evidence they presented goes well beyond assumption and speculation, is not too incredible to be believed, and relates directly to the material issues in the case. Taking all reasonable inferences from that evidence in their favor, genuine factual disputes as to defect and causation are reasonably discernable. Whether Christensen and Scott ultimately will prevail at trial under the appropriate evidentiary standard is irrelevant — at the summary judgment stage courts do not weigh evidence or predict how a jury will decide the case. Christensen and Scott were not required to "prove" their case; rather, they were required to and did demonstrate the existence of genuine issues of material fact to be litigated at trial. Thus, it was error to grant summary judgment.

## V. CONCLUSION

We REVERSE the superior court's grant of summary judgment to Alaska Sales & Service and REMAND for further proceedings.

---

[53] *See Thompson v. Cooper*, 290 P.3d 393, 399-400 (Alaska 2012) (acknowledging that causation could be inferred from symptoms beginning after an accident); *John's Heating Serv.*, 46 P.3d at 1036 (noting "temporal relationship between the symptoms" and alleged source of injury bolsters credibility of expert's causation testimony).